William D. Hyslop
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 2:20-CR-0053-WFN-2 |
| v. | Plea Agreement |
| BRYON TELLIER, | |
| Defendant. | |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Bryon Tellier and the Defendant's counsel, Zachary Ayers, agree to the following Plea Agreement:

1) <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant agrees to plead guilty to Count 1 of the Indictment filed on June 2, 2020, charging the Defendant with Manufacture Counterfeit Obligations and Securities of United States, in violation of 18 U.S.C. §§ 471, 2. The Defendant, understands that the charge contained in the Indictment is a Class C Felony. The Defendant also understands that the maximum statutory penalty for Manufacture Counterfeit Obligations and Securities of United States, in violation of 18 U.S.C. §§ 471, 2, is: (1) not more than 20 years imprisonment; (2) and/or a $250,000 fine; (3)

not more than 3 years supervised release; (4) a $100 special penalty assessment; and (5) restitution.

The Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2) <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement. The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

3) <u>Waiver of Constitutional Rights</u>:

The Defendant understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

a) The right to a jury trial;
b) The right to see, hear and question the witnesses;
c) The right to remain silent at trial;

d) The right to testify at trial; and

e) The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4) Elements of the Offense:

The parties agree that in order to convict the Defendant of Manufacture Counterfeit Obligations and Securities of United States, in violation of 18 U.S.C. §§ 471, 2, the United States would have to prove beyond a reasonable doubt the following elements:

*First*, beginning on a date unknown, but by on or about March 29, 2020, and continuing until on or about April 7, 2020, in the Eastern District of Washington, the Defendant, falsely made, forged, and counterfeited $100 denomination Federal Reserve Notes, bearing serial numbers: EC90304318C, GS19710326Y, GS21739318Y, GS81739878Y, IL71282013Y, GS21739312Y, EC20104346C, IL70182067Y, EC99344431 1C, GS77710029Y, IL08882013Y, GS51710011Y, GS51710016Y, and RD38359900M;

*Second*, the Defendant acted with intent to defraud.

5) Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

On March 29, 2020, Spokane Sheriff's Office ("SCSO") Sergeant Mark Fox contacted the United States Secret Service ("USSS") Los Angeles Field Office duty

*United States v. Bryon Tellier* - Plea Agreement - 3

desk with a report that Jessica Johnson (later identified as Jazzlynn Johnson), the Defendant, and Stephen Johnson had been arrested and found to be in possession of approximately $1,400 in Counterfeit ("CFT") Federal Reserve Notes ("FRN"). The USSS Field Office contacted USSS Special Agent ("SA") Russell Pablo who in turn contacted Sergeant Fox to assume control of the CFT investigation.

On March 29, 2020, a SCSO Deputy was dispatched to the La Quinta Inn for a suspicious circumstances call. SCSO advised they were contacted by a hotel employee (Employee 1) who reported possible counterfeiting, drug use, and fraud associated with room numbers 125 and 126. Employee 1 stated she was working at the location on March 27, 2020 when an individual identified as "Jazzlynn,"checked into the hotel using a credit card to pay for the rooms. Employee 1 believed that another male, similar in age to "Jazzlynn," was in room 126 and an older male was in room 125. Employee 1 further state that another employee (Employee 2) cleaning room 125 observed plastic cups filled with clear liquid and "bills" in the cups with the liquid. Employee 1 then looked into the credit card used to rent the room and determined that it was stolen. "Jazzlynee" later came back to the front desk to try and pay for another night attempting to use three (3) different cards, resulting in Employee 1 contacting law enforcement to have the individuals evicted.

SCSO deputies contacted Jazzlynn Johnson and the Defendant who occupied Room 126. A search of the room revealed $100 CFT FRNs, located on the nightstand near the bed. Additional $100 CFT FRNs were located in a pink folder that belonged to Jazzlynn Johnson. A deputy noted that he located fourteen (14) complete bills, however, some had print errors such as having one side printed upside down and seven (7) bills had only one side printed. Further inspection of the seven bills with one side printed revealed that they were washed $1 FRNs. Inside the pink folder was black construction paper with indexing marks, arrows, and double-sided tape as well as several pieces of copy paper with images of $100 bills printed on them; all of this is further indication of a counterfeit manufacturing operation. The deputy also located

*United States v. Bryon Tellier* - Plea Agreement - 4

several acrylic craft paints and green reflective powder close in color to the genuine FRNs. Jazzlynn Johnson stated the clear bag containing the paints belonged to her but that her dad used the paint to make the $100 CFT FRNs. In the kitchen area of the room were three plastic cups near the sink and spray bottles that contained degreaser and "Goof Off" adhesive remover. Located inside the plastic cups were genuine $1 FRNS in various states of having the print washed or bleached off. Jazzlynn Johnson indicated that those too belonged to her dad and that "he washes the bills so they can be printed as $100s." Additionally, an HP printer was located that Jazzlynn Johnson said was her dad's and used to make CFT FRNs. A search incident to arrest of TELLIER also produced an altered credit card and a $100 CFT FRN.

On March 31, 2020, SA Pablo examined the CFT FRNs seized by the SCSO from the La Quinta Inn and the vehicles. SA Pablo determined there were thirty-three (33) partially "bleached" or "washed" genuine $1 FRNs. He also found that there were eighteen (18) completed $100 CFT FRNs. The CFT $100 FRNs had the following serial numbers: *EC90304318C, GS19710326Y, GS21739318Y, GS89014120Y, GS81739878Y, IL71282013Y, GS21739312Y, EC90304318C, EC20104346C, IL70182067Y, EC99304311C, GS77710029Y, IL08882013Y, GS51710011Y, GS51710016Y, and RD38359900M.*

In a post-*Miranda* statement, the Defendant informed law enforcement that he travelled to Spokane on March 25, 2020 with his girlfriend whose actual name is Jazzlynn Johnson, not Jessica as previously provided. He went onto state that he and Jazzlynn Johnson were "bleaching" genuine FRNs to make CFT FRNs. His role was to paint/draw the watermarks and security strip on the CFT FRNs after they had been bleached. Jazzlynn Johnson would then use a computer and printer to print the CFT FRNs. He further stated that they were manufacturing CFT FRNs and had been in possession of fraudulent credit cards and that the hotel had been paid for with fraudulent credit cards. The Defendant stated that Jazzlynn Johnson learned how to make CFT from people on the west side of the state.

*United States v. Bryon Tellier* - Plea Agreement - 5

On April 7, 2020, Jazzlynn Johnson and the Defendant attempted to pass a $100 CFN at the Rite-Aid, 12222 E. Sprague Ave., Spokane Valley, Washington. A review of SCSO reports from the incident indicates that deputies responded to a report of CFT FRNS being used at the Rite-Aid. A Rite-Aid employee reported that a male and female wearing black Raider's masks on their faces tried to purchase items from the store using a fake $100 bill. The employee stated both individuals left the store on foot and described them as a male about 25-30 years old, medium build, wearing a T-shirt and jeans and a female, 25-30 years old, having blonde hair, and wearing a white shirt.

USSS SA Pablo reviewed the security camera footage and confirmed the video depicts a white female, wearing a dark-colored sweater and blue jeans, along with a white male wearing a white t-shirt and blue jeans. Both individuals a wearing "mask" coverings. The female appears to attempt to pay with a credit card, which apparently was declined. The female than retrieved an FRN from her purse and attempted to pay. In the footage, the cashier examines the FRN and calls over another employee. Both the male and female then leave the store.

On April 7, 2020, SA Pablo and SCSO deputies made contact with the HomeTowne Studio hotel manager. The manager stated that he remembered a "young guy" by the name of "Bryon" that had been staying in room 303 but that "Bryon" had checked out. The manager further stated that he recalled "Bryon" renting two rooms, rooms 303 and 308. The manager stated that "Bryon" had checked out but that his "father," believed to be S. JOHNSON, was staying in room 308. The agents were allowed to search room 303 but nothing of evidentiary value was located.

A search of room 308 located the following items: (1) an HP Printer; (2) ink cartridges; (3) finished CFT; (4) uncut CFT Circ Sheets; (5) genuine US Currency in the process of being bleached; (6) receipts indicating fraudulent activity and use of CFT; and (7) items attributed to Jazzlynn Johnson, the Defendant, and Stephen Johnson.

6) <u>The United States Agrees:</u>

a) <u>Dismissal(s):</u>

At the time of sentencing, the United States agrees to move to dismiss Count 2 of the Indictment, which charges the Defendant with Uttering Counterfeit Obligations and Securities of United States, in violation of 18 U.S.C. §§ 472,2.

b) <u>Not to File Additional Charges:</u>

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

7) <u>United States Sentencing Guideline Calculations:</u>

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

a) <u>Base Offense Level:</u>

The United States and the Defendant agree that the base offense level for Manufacture Counterfeit Obligations and Securities of United States, in violation of 18 U.S.C. §§ 471, 2 is 9. *See* USSG §2B5.1(a).

b) <u>Specific Offense Characteristics:</u>

The parties make no agreement on the application of specific offense characteristics. The parties may argue for or object to the application of any specific offense characteristics.

c) <u>Victim-Related Adjustments:</u>

The parties make no agreement on the application of victim-related adjustments. The parties may argue for or object to the application of any victim-related adjustments.

*United States v. Bryon Tellier* - Plea Agreement - 7

d) <u>Role in the Offense</u>:

The parties make no agreement on the application of role in the offense adjustments. The parties may argue for or object to the application of any role in the offense adjustments.

e) <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than September 15, 2020, the United States will recommend that the Defendant receive a two (2) level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). If the adjusted offense level is 16 or greater and the Defendant enters a plea of guilty no later September 15, 2020, the United States will recommend that the Defendant receive an additional one (1) level downward adjustment for timely acceptance of responsibility, pursuant to USSG §3E1.1(b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a two (2) or three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

f) <u>Criminal History</u>:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigation Report is completed.

//

8) <u>Departures/Variance</u>:

The Defendant intends to request a downward departure from the sentencing guidelines. The United States reserves its right to oppose any downward departure.

9) <u>Incarceration</u>:

The United States agrees to recommend that the Court impose a sentence at the low-end of the applicable sentencing guideline range as determined by the Court. The Defendant may recommend any legal sentence he deems appropriate.

10) <u>Criminal Fine</u>:

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

11) <u>Supervised Release</u>:

The United States and the Defendant agree to recommend that the Court impose a three (3) year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

a) that the Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

b) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

c) that the Defendant provide financial information, provide copies of Federal income tax returns and allow credit checks, at the direction of the Probation Officer;

d) that the Defendant shall disclose all assets and liabilities to the Probation Officer and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the Probation Officer; and

e) that the Defendant be prohibited from incurring any new debt, opening new lines of credit, or enter any financial contracts or obligations without the prior approval of the Probation Officer;

f) that the Defendant participate and complete financial counseling and life skills programs at the direction of the Probation Officer;

12) Restitution:

The United States and Defendant hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in an amount to be determined at or before sentencing. The Defendant may advocate that no restitution is owed. The United States and Defendant agree that interest on this restitution amount, if any, should be waived.

13) Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

14) Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15) Judicial Forfeiture:

The Defendant agrees to voluntarily forfeit and relinquish any and all right, title and interest he has in the following identified assets to the United States:

 a. HP Office Jet 4650 Printer, S/N TH75KD2G9, no power cable;
 b. Black ZTE cellphone with smashed screen, no power cable;
 c. Blue BNY 16 GB Thumbdrive;
 d. Black Cruzer 8 GB Thumbdrive;
 e. Black HP Office Jet 200 Mobile Printer, S/N HQ-TRE 71025;
 f. Black metal credit card punch machine with red handle; and,
 g. Silver Central Machinery Ultrasonic Cleaner machine, serial number 374051847.

The Defendant acknowledges that the asset(s) included in this agreement are subject to forfeiture as property representing proceeds or property that was used or intended to be used, to commit or to facilitate the commission of the counterfeiting offense, and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 982 or 18 U.S.C. § 492, and 28 U.S.C. § 2461.

The Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. The Defendant agrees to execute any and all forms and pleadings necessary to effectuate the forfeiture or abandonment of the assets.

The Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

The Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the asset(s) the Defendant is agreeing to forfeit in this Plea Agreement.

16) <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the

Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

17) <u>Appeal Rights</u>:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction and the sentence the Court imposes, including any restitution order. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

18) <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

//
//
//
//
//
//
//
//

*United States v. Bryon Tellier* - Plea Agreement - 12

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

William D. Hyslop
United States Attorney

_____    9/15/2020
Patrick J. Cashman                  Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____   9-15-2020
Bryon Tellier                      Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____   9-15-2020
Zachary Ayers                      Date
Attorney for the Defendant

*United States v. Bryon Tellier* - Plea Agreement - 14